UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                Case No. 20-CR-148

DAVID GUERRERO,

    Defendant.

## PLEA AGREEMENT

1. The United States of America, by its attorneys, Richard G. Frohling, Acting United States Attorney for the Eastern District of Wisconsin, and Benjamin Proctor, Assistant United States Attorney, and the defendant, David Guerrero, individually and by attorney Michael Hart, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

### CHARGES

2. The defendant has been charged in 15 counts of a 23-count indictment, which alleges the defendant committed violations of Title 18, United States Code, Sections 371, 1028A, and 1347, and Title 42, United States Code, Sections 1320a-7b(b)(1) and (b)(2).

3. The defendant has read and fully understands the charges contained in the indictment. He fully understands the nature and elements of the crimes with which he has been charged, and those charges and the terms and conditions of the plea agreement have been fully explained to him by his attorney.

4. The defendant voluntarily agrees to plead guilty to the following count set forth in full as follows:

## COUNT ONE
(Conspiracy)

**THE GRAND JURY FURTHER CHARGES THAT:**

1. The allegations in paragraph 1 of this Indictment are re-alleged and incorporated by reference.

2. From approximately September 2016 and continuing thereafter through approximately June 2018, in the State and Eastern District of Wisconsin,

**DAVID GUERRERO and
ALEXANDER SHISTER**

knowingly conspired and agreed with each other and with others known and unknown to the Grand Jury, to commit offenses against the United States, namely, to knowingly and willfully solicit, receive, offer, and pay remuneration, specifically kickbacks and bribes, in return for referring, and inducing a person to refer, individuals to the Pharmacies for the furnishing and arranging for the furnishing of, and for ordering and arranging for the ordering of, any item and service for which payment may be made in whole or in part by Medicare and Medicaid, in violation of Title 42, United States Code, Sections 1320a-7b(b)(l)(A), 1320a-7b(b)(2)(A), 1320a-7b(b)(l)(B), and 1320a-7b(b)(2)(B).

**Manner and Means of the Conspiracy**

3. The manner and means sought to accomplish the objects and purposes of the conspiracy included, among other things:

   a. Starting in approximately September 2016, Shister agreed to pay money to Guerrero in exchange for Guerrero arranging to have prescriptions for compounded pain cream medications sent to and filled at the Pharmacies.

   b. Guerrero identified and caused others to identify Medicaid- and Medicare-eligible patients of Clinic #1 and Clinic #2 to receive prescriptions for compounded pain cream medications, even though Guerrero is not a licensed medical provider.

   c. Guerrero obtained, used, and edited, and caused others to obtain, use, and edit, preprinted prescription forms for compounded pain cream medications.

   d. Guerrero sent, and caused others to send, to the Pharmacies, prescriptions for compounded pain cream medications to be filled and dispensed at the Pharmacies, without input from the patients regarding which pharmacy to use.

   e. Shister, as owner and operator of the Pharmacies, submitted, and caused others to submit, claims for reimbursement to Medicare and Medicaid for filling prescriptions for compounded pain cream medications procured through kickback payments made to Guerrero.

2

  f. Between on or around September 2016, through on or around January 2018, Shister, through the Pharmacies, submitted claims for reimbursement to Medicare and Medicaid totaling substantial sums for filling numerous prescriptions for compounded pain cream medication for patients of Clinic #1 and Clinic #2.

  g. From on or around September 2016, through on or around January 2018, Shister, through the Pharmacies, paid Guerrero substantial remuneration in exchange for Guerrero referring individuals to the Pharmacies, and for arranging for the furnishing and the ordering of prescriptions for compounded pain cream medications to be filled by the Pharmacies.

### Acts in Furtherance of the Conspiracy

4. In furtherance of the conspiracy and to accomplish the objects and purposes of the conspiracy, the following acts, among others, were committed and were caused to be committed:

  a. On or around October 9, 2016, Guerrero sent an email to N.W. stating in part, "Please speak to Alex to confirm every 2 weeks for payment on compounds," referring to Alexander Shister. N.W. responded in part, "Alex is aware is [sic] owes you $600 more. Total of $1600 for 16 scripts up to 9/30," and Guerrero replied in part, "Sounds great."

  b. On or around October 24, 2016, Guerrero sent an email to N.W. with a preprinted prescription form for compounded pain cream medication that listed ingredients, had place holders for patient information, had place holders for prescriber information, and had instructions to "Please fax to 414-461-6007," which was a fax number associated with Medpoint Pharmacy.

  c. On or about the dates listed in Counts Two through Nine of this Indictment, Guerrero solicited and received kickback payments from Shister.

  d. On or about the dates listed in Counts Ten through Seventeen of this Indictment, Shister, through the Pharmacies, offered and paid kickbacks to Guerrero.

  e. On or before June 7, 2018, Guerrero took and kept in his possession jars of compounded pain cream medications that had been filled by the Pharmacies for patients of Clinics #1 and #2.

All in violation of Title 18, United States Code, Section 371.

5. The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offense described in paragraph 4. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the allegations in Count One of the indictment as well as the following facts beyond a reasonable doubt. The defendant admits that these facts are true and correct and establish his guilt beyond a reasonable doubt:

3

Between at least September 2016 through June 2018, Alexander Shister and David Guerrero engaged in a kickback conspiracy whereby Shister paid Guerrero approximately $100 for each compounded medication prescription, or patient with a compound medication prescription, that Guerrero referred to pharmacies that Shister owned, including Medpoint Pharmacy, 2501 West Silver Spring Road, Milwaukee, Wisconsin; Omnicare Pharmacy, 1134 West North Avenue, Milwaukee Wisconsin; Greenfield Pharmacy, 5233 South 27th Street, Greenfield, Wisconsin, and Clinica Latina Pharmacy, 1238 S Cesar E Chavez Dr., Milwaukee, Wisconsin. At the time, David Guerrero worked in various capacities at two clinics in the Milwaukee area: Viva Advanced Healthcare and Clinica Latina. Guerrero was not a licensed medical provider.

Compounded drugs are customized medications created for patients whose medical needs cannot be met by commercially available drugs. As such, pharmacies like Shister's that fill compounded medication prescriptions bill the patient or the patient's insurance or benefit program very high amounts. In this case, Shister would help select ingredients to be included in the prescriptions for compounded medications based in part on the reimbursement rates paid by Medicare and Medicaid. Shister's pharmacies then billed Medicaid upwards of $2,000 per compounded medication prescription, and Medicaid reimbursed the pharmacies between $300 and $1000 for each prescription. Shister's pharmacies likewise billed Medicare for compounded medication prescriptions, and Medicare reimbursed the pharmacies between $200 and $3400 for each prescription.

In furtherance of the kickback conspiracy, Guerrero used pre-printed prescription forms that had the ingredients for the compounded medication already listed. Guerrero would identify patients at the clinics to receive compounded medications, add patient information to the pre-printed prescription forms, and send the signed prescription forms directly to the Shister-owned pharmacies to be filled. The patients never saw the actual prescription forms and never had a say in which pharmacy filled the prescription. After being filled and billed by the Shister pharmacies, the jars of compounded pain creams would sometimes be delivered to the clinics by Shister or Guerrero. Guerrero and others at the clinics would then hand the jars of cream to patients at their next clinic visit. Using kickback money received from Shister, Guerrero paid other employees at the clinics for assisting him in gathering patient information in furtherance of the kickback scheme.

Between September 2016 and December 2017, Guerrero's bank account received around 100 separate kickback payments from Shister through his pharmacies totaling approximately $116,651.

Medicaid records show that, between September 16, 2016, and October 3, 2017, Shister's pharmacies billed the Medicaid program a total of $744,142.44 for filling 388 prescriptions for compounded pain cream issued to 225 Medicaid members through Clinica Latina. Medicaid paid Shister's pharmacies $265,770.92.

4

Medicare records show that during that same time period, Shister's pharmacies billed the Medicare program an unknown amount for filling 180 prescriptions for compounded pain cream issued to 78 Medicare beneficiaries through Clinica Latina. Medicare paid Shister's pharmacies $175,947.14.

Medicaid records further show that, between November 3, 2016, and December 29, 2017, Shister's pharmacies billed the Medicaid program a total of $2,153,296.86 for filling 1,247 prescriptions for compounded pain creams issued to 374 Medicaid members by Viva Advanced Healthcare. Medicaid paid Shister's pharmacies $428,455.60.

Medicare records show that during that same time period, Shister's pharmacies billed the Medicare program an unknown amount for filling 138 prescriptions for compounded pain cream issued to 56 Medicare beneficiaries through Viva Advanced Healthcare. Medicare paid Shister's pharmacies $119,746.38.

In sum, Medicaid paid out approximately $694,226.52 and Medicare paid out approximately $295,693.52 to Shister's pharmacies for filling compounded pain cream prescriptions that were generated as part of the kickback scheme between Shister and Guerrero.

Guerrero also participated in another kickback scheme that the parties agree may be considered relevant conduct in this matter. That scheme involved Assurance Drug Testing Laboratories, Inc. ("Assurance").

Between January 2017 and January 2019, David Guerrero received kickback payments from Assurance in the form of a percentage of the profit earned by Assurance for the urine drug screening tests Guerrero brought to the company. At the time, Guerrero worked in various capacities at clinics in the Milwaukee area including Viva Advanced Healthcare, Life Changing Ministries, and Clinica Latina. Initially, consistent with the terms of his contract with Assurance, Guerrero kept 25% of Assurance's profits for the urine samples he brought to the company from patients at those clinics. However, in October 2017, Guerrero negotiated his percentage to 30%, along with a commitment to deliver over 400 patient urine samples per month to Assurance.

During the execution of a search warrant at Guerrero's home on June 7, 2018, investigators found 59 unrefrigerated urine samples in Guerrero's garage. In order for test results to be valid, urine samples must be properly refrigerated soon after collection. A review of paid Medicaid claims showed that 37 of the samples found in Guerrero's garage were eventually billed to and paid for by Medicaid for testing purportedly completed by Assurance.

Between January 2017 and January 2019, Guerrero received a total of 23 kickback payments from Assurance, totaling approximately $157,585.89, according to Guerrero's bank records and ADP payroll records produced by Assurance. Based on internal tracking by Assurance, Medicare and Medicaid paid

5

out approximately $874,190.69 for testing the urine samples generated by the kickback scheme between Guerrero and Assurance.

This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in, the offense.

## PENALTIES

6. The parties understand and agree that the offense to which the defendant will enter a plea of guilty carries the following maximum penalties: up to 5 years in prison, up to $250,000 in fines, up to 3 years of supervised release, and a $100 special assessment. The parties further recognize that a restitution order may be entered by the court.

7. The defendant acknowledges, understands, and agrees that he has discussed the relevant statutes as well as the applicable sentencing guidelines with his attorney.

## DISMISSAL OF REMAINING COUNTS

8. The government agrees to move to dismiss the remaining counts of the indictment charging the defendant at the time of sentencing.

## AGREEMENT NOT TO PURSUE CHARGES

9. Because the parties agree that the Court may consider as relevant conduct Guerrero's participation in a kickback scheme with Assurance Drug Testing Laboratories, Inc. ("Assurance"), the government agrees that it will not pursue separate charges under 42 U.S.C. § 1320a-7b(b)(l) against Guerrero based on that kickback scheme involving Assurance as described in Paragraph 5 above.

## ELEMENTS

10. The parties understand and agree that in order to sustain the charge of conspiracy to engage in a kickback scheme, as set forth in Count One, the government must prove each of the following propositions beyond a reasonable doubt:

6

First, the conspiracy as charged existed;

Second, the defendant knowingly became a member of the conspiracy with the intent to advance the conspiracy; and

Third, one of the conspirators committed an overt act in an effort to advance the goal of conspiracy.

## SENTENCING PROVISIONS

11. The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

12. The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

13. The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of the defendant's criminal history.

### Sentencing Guidelines Calculations

14. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided

7

false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

## Relevant Conduct

15. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offense to which the defendant is pleading guilty.

## Base Offense Level

16. The parties agree to recommend to the sentencing court that the applicable base offense level is 8 under Sentencing Guidelines Manual §§ 2X1.1(a) and 2B4.1(a).

## Specific Offense Characteristics

17. The parties agree to recommend to the sentencing court that an 18-level increase for the value of the bribe or improper benefit to be conferred exceeding $3,500,000 under Sentencing Guidelines Manual §§ 2B4.1(b)(1)(B) and 2B1.1(b)(1)(I) is applicable to the offense level.

## Role in the Offense

18. The parties agree to recommend to the sentencing court that a 2-level increase for being a leader/organizer/manager of criminal activity under Sentencing Guidelines Manual § 3B1.1 is applicable to the offense level. of the offense charged in Count One.

## Acceptance of Responsibility

19. The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), but only if the defendant exhibits conduct consistent with the acceptance of responsibility. The defendant acknowledges, understands, and agrees that conduct consistent with the acceptance of

8

responsibility includes but is not limited to the defendant's voluntary identification and disclosure to the government of any and all actual or potential victims of the offenses prior to sentencing. In addition, if the court determines at the time of sentencing that the defendant is entitled to the two-level reduction under § 3E1.1(a), the government agrees to make a motion recommending an additional one-level decrease as authorized by Sentencing Guidelines Manual § 3E1.1(b) because the defendant timely notified authorities of his intention to enter a plea of guilty.

### Sentencing Recommendations

20. Both parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

21. Both parties reserve the right to make any recommendation regarding any other matters not specifically addressed by this agreement.

22. The government agrees to recommend a sentence that includes a term of imprisonment within the range of 46 to 57 months.

### Court's Determinations at Sentencing

23. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 6 above. The parties further understand that the sentencing court

9

will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

24. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

## FINANCIAL MATTERS

25. The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable in full upon entry of the judgment of conviction. The defendant further understands that any payment schedule imposed by the sentencing court shall be the minimum the defendant is expected to pay and that the government's collection of any and all court imposed financial obligations is not limited to the payment schedule. The defendant agrees not to request any delay or stay in payment of any and all financial obligations. If the defendant is incarcerated, the defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the court specifically directs participation or imposes a schedule of payments.

26. The defendant agrees to provide to the Financial Litigation Unit (FLU) of the United States Attorney's Office, at least 30 days before sentencing, and also upon request of the FLU during any period of probation or supervised release imposed by the court, a complete and sworn financial statement on a form provided by FLU and any documentation required by the form. The defendant further agrees, upon request of FLU whether made before or after sentencing, to promptly: cooperate in the identification of assets in which the defendant has an interest, cooperate in the liquidation of any such assets, and participate in an asset deposition.

### Special Assessment

27. The defendant agrees to pay the special assessment in the amount of $100 prior to or at the time of sentencing.

## Restitution

28. For the offense charged in Count One, the defendant agrees to pay restitution to Medicaid in the amount of $694,226.52 and to Medicare in the amount of $295,693.52. The parties agree to recommend that any restitution obligation be joint and several with co-defendant Alexander Shister. The defendant understands that because restitution for the offense is mandatory, the amount of restitution shall be imposed by the court regardless of the defendant's financial resources. The defendant agrees to cooperate in efforts to collect the restitution obligation. The defendant understands that imposition or payment of restitution will not restrict or preclude the filing of any civil suit or administrative action.

29. With regard to the kickback scheme involving Assurance and Guerrero described in Paragraphs 5 and 9, the defendant agrees to pay restitution to Medicaid in the amount of $133,948.01 and to Medicare in the amount of $23,637.88, for a total of $157,585.89.

## DEFENDANT'S COOPERATION

30. The defendant, by entering into this agreement, further agrees to fully and completely cooperate with the government in its investigation of this and related matters, and to testify truthfully and completely before the grand jury and at any subsequent trials or proceedings, if asked to do so. The parties acknowledge, understand and agree that if the defendant provides substantial assistance to the government in the investigation or prosecution of others, the government, in its discretion, may recommend a downward departure from: (a) the applicable sentencing guideline range; (b) any applicable statutory mandatory minimum; or (c) both. The defendant acknowledges and understands that the court will make its own determination regarding the appropriateness and extent to which such cooperation should affect the sentence.

## DEFENDANT'S WAIVER OF RIGHTS

31. In entering this agreement, the defendant acknowledges and understands that he surrenders any claims he may have raised in any pretrial motion, as well as certain rights which include the following:

   a. If the defendant persisted in a plea of not guilty to the charges against him, he would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

   b. If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

   c. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

   d. At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and he would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

   e. At such trial, defendant would have a privilege against self-incrimination so that he could decline to testify and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

32. The defendant acknowledges and understands that by pleading guilty he is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has explained these rights to him and the consequences of his waiver of these rights.

12

The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

33. The defendant acknowledges and understands that he will be adjudicated guilty of the offense to which he will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

34. The defendant knowingly and voluntarily waives all claims he may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

35. Based on the government's concessions in this agreement, the defendant knowingly and voluntarily waives his right to appeal his sentence in this case and further waives his right to challenge his conviction or sentence in any post-conviction proceeding, including but not limited to a motion pursuant to 28 U.S.C. § 2255. As used in this paragraph, the term "sentence" means any term of imprisonment, term of supervised release, term of probation, supervised release condition, fine, forfeiture order, and restitution order. The defendant's waiver of appeal and post-conviction challenges includes the waiver of any claim that (1) the statutes or Sentencing Guidelines under which the defendant is convicted or sentenced are unconstitutional, and (2) the conduct to which the defendant has admitted does not fall within the scope of the statutes or Sentencing Guidelines. This waiver does not extend to an appeal or post-conviction

13

motion based on (1) any punishment in excess of the statutory maximum, (2) the sentencing court's reliance on any constitutionally impermissible factor, such as race, religion, or sex, (3) ineffective assistance of counsel in connection with the negotiation of the plea agreement or sentencing, or (4) a claim that the plea agreement was entered involuntarily.

### Further Civil or Administrative Action

36. The defendant acknowledges, understands, and agrees that the defendant has discussed with his attorney and understands that nothing contained in this agreement, including any attachment, is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

### GENERAL MATTERS

37. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

38. The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

39. The defendant understands that pursuant to the Victim and Witness Protection Act, the Justice for All Act, and regulations promulgated thereto by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense on the victim and further may make a recommendation regarding the sentence to be imposed. The defendant acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement.

14

## EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

40. The defendant acknowledges and understands if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of his breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and his attorney have signed a proffer letter in connection with this case, then the defendant further acknowledges and understands that he continues to be subject to the terms of the proffer letter.

## VOLUNTARINESS OF DEFENDANT'S PLEA

41. The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

15

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 7-19-22

DAVID GUERRERO
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: July 19, 2022

MICHAEL HART
Attorney for Defendant

For the United States of America:

Date: 7/21/22

RICHARD G. FROHLING
Acting United States Attorney

Date: 7-20-22

BENJAMIN PROCTOR
Assistant United States Attorney

16